**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**MARK WILLIAM THOMAS**, *et al., on behalf of
himself and all others similarly situated,*

       **Plaintiffs,**

**v.**                                        **Civil Action No. 3:18-cv-00684-MHL**

**EQUIFAX INFORMATION SERVICES, LLC.,**

       **Defendant.**

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
ATTORNEYS' FEES, AND CLASS REPRESENTATIVE SERVICE AWARDS**

Plaintiffs Mark William Thomas, Bertram M. Brown, and C. Ralph Copeland, Jr., on behalf of themselves and all others similarly situated, by counsel, and Class Counsel respectfully submit this memorandum of law in support of their Motion for Attorney's Fees and Class Representative Service Awards.[1]

## I.      OVERVIEW

This case and proposed settlement consolidates the numerous cases across the country brought against Equifax Information Services, LLC ("Equifax"). This nationwide settlement resolves at least eighteen pending Fair Credit Reporting Act ("FCRA") putative class action cases (*see* Exhibit A to Settlement Agreement, Doc. No. 33-2) challenging Equifax's alleged failure to update tax liens and civil judgements that had been satisfied, vacated, dismissed, expunged, or

---

[1] Pursuant to the Preliminary Approval Order and briefing schedule contained therein (Doc. No. 40), Plaintiffs and Class Counsel are to file two separate motions – one as to fees and the other as to final approval – by two different dates. A separate Motion for Final Approval of the Class settlement will be filed by its August 30, 2019 deadline.

withdrawn.  15 U.S.C. § 1681e(b).  Equifax (and Experian and Trans Union) (collectively the "Big-3") each hid LexisNexis's involvement in the records collection process and reported the source as the courthouse or government agency.

As will be addressed more fully next week, the Settlement provides tremendous benefit to the Class.  The Court has already considered and preliminarily found that the Settlement would be fair and adequate.  (Doc. No.40, entered May 14, 2019.)  As a result of the Settlement, Equifax has agreed to cease reporting tax liens and civil judgments, permanently removing existing and past records from its database.  Now, after national notice—both by publication and direct to roughly 2 million consumers—no objections have been lodged, and not one of the state Attorneys General or any federal agency have noted any opposition or disagreement with this result.  While class members may still serve objections as to attorneys' fees after this present motion, the basics of the proposed fee and service awards have been fully disclosed.

Like the Trans Union and Experian settlements approved by the Court, the Settlement with Equifax is an excellent resolution for consumers (who otherwise retain their existing claims) and a landmark achievement in reforming the way in which public records are reported.  The fees herein sought would compensate Class Counsel for this achievement and the substantial work required – to date and hereafter – to make it happen.

## II.    HISTORY OF THIS LITIGATION

The history of this case was set out in detail in Plaintiffs' motion for preliminary approval and will be only summarized here.  In short, this case is the culmination of the decade-long effort by Class Counsel to change how consumer reporting agencies report public records.  In addition to this *Thomas* action, this Settlement resolves eighteen class action cases pending against Equifax around the country.  The present case is a consolidation of these efforts and is the docket within which approval is sought in order to maintain the uniformity between the three comparable "Big-

3" public records settlements.  The other class actions against Equifax challenging Defendant's public record reporting practices are venued in a number of States, including New York, California, Tennessee, Alabama, Arkansas, South Carolina, Florida, Pennsylvania, Hawaii, Nevada, Vermont, Maryland, Minnesota, Iowa, Washington and North Carolina.  Significant discovery had been conducted in many of these cases, with public records data obtained, expert discovery underway, and class certification motion practice imminent.

Each of these cases challenged either Equifax's failure to accurately report public record information or its practice of shielding LexisNexis as a source of information, from consumers. At all times during the pendency of these cases, Equifax vigorously denied all claims asserted against it.  Equifax argued that its procedures regarding the updating and reporting of public records did comply with section 1681e(b), and that its merits defense barred plaintiffs' claim.

The Parties engaged in extensive settlement negotiations, including three full-day sessions and multiple telephonic conferences with a private mediator, Eric Green, and follow up before Magistrate Judge David Novak.

Pursuant to Federal Rule of Civil Procedure 23 and 54, Plaintiffs now seek approval of Class Counsel's attorneys' fees and Class Representative service awards.

### III.  <u>THE REQUESTED ATTORNEYS' FEES SHOULD BE APPROVED.</u>

The Rule 23(b)(2) Settlement presented here produced a tremendous value for the Class. It is difficult to overstate the value of overhauling Equifax's public record reporting.  As with the Trans Union and Experian settlements, an industry expert and an economist, Plaintiffs' expert Corey Stone—who created and then ran the division of the CFPB that handled the credit reporting industry— and will provide their opinion in support of final approval as to the substantial value brought by the injunctive relief mandated by the Settlement.  Settlement Agreement, Doc. No. 33-2, at §§ 4.1, 4.4.

The alternative dispute resolution program ("ADR Program") provided in the Settlement also provides the opportunity for a cash payment for any consumer, with attorneys' fees for assistance of such efforts – often reaching tens of thousands of dollars in individual FCRA cases – entirely paid by Equifax.  For all consumers who seek help—whether (1) with questions about the Settlement; (2) assistance in determining if they have a claim; (3) presenting that claim through the ADR Program, including obtaining records and drafting any submissions to Magistrate Judge Novak in connection with binding resolution—legal assistance will be provided regardless of how many hours are required over the multi-year settlement term.  As Class Counsel has previously detailed in support of the settlements with TransUnion and Experian, the work required post-settlement can be substantial depending on the number of consumers who reach out for assistance with the ADR program.  For all of the same reasons, Class Counsel anticipate expending substantial additional time in connection with the ADR program here.  Declaration of Micah Adkins ("Adkins Decl.") at ¶ 17; Leonard Bennett ("Bennett Decl.") at ¶¶ 36-40; Declaration of E. Michelle Drake ("Drake Decl.") at ¶ 17; Declaration of James A. Francis ("Francis Decl.") at ¶¶ 67-70; Declaration of Kristi C. Kelly ("Kelly Decl.") at ¶¶ 22-23. Unlike in the TransUnion settlement briefing, here Class Counsel can now actually confirm that this burden is real.  Even today, at least six attorneys and support staff at various firms spend the majority of their work day assisting TransUnion and Experian consumers, and Class Counsel expect to continue this work in connection with the Equifax ADR program. *Id.*  In fact, there is reason to believe that the consumer response rate in connection with the Equifax ADR program will be even greater than in connection with TransUnion and Experian, because of the well-publicized Equifax data breach settlement, which has already led to additional consumers contacting Class Counsel.  *See, e.g.* Francis Decl. at ¶ 69.

These estimates do not account for the substantial work required for the ongoing notice program or later motions practice as to future public records reporting procedures Equifax might propose.  The fee sought in this settlement is substantially less than in the TransUnion and Experian cases - $9,500,000 versus $16,200,000 (Trans Union) and $15,935,000 (Experian).  This is because of three differences:  a)  the settlement here did not include a claim under 15 U.S.C. § 1681g(a), which had been previously resolved (and for which fees were already compensated) in *Jenkins v. Equifax Information Services, LLC*, No. 3:15cv443, Doc. No. 73 (E.D. Va. Oct. 31, 2016);  b)  this settlement comes after that in *Soutter v. Equifax Information Services, LLC*, No.3:10cv107,  Doc. No. 247 (E.D. Va. April 5, 2016), in which Virginia General District Court judgments had already been addressed; and, c)  there was modestly less work in these cases than in those against TransUnion and Experian. Still, Class Counsel here are seeking a fee, which, even though paid for entirely by Equifax, is very large.  But so is the burden and risk that Class Counsel will be ordered to accept going forward.  In exchange for all of this relief, consumers are not releasing any individual claims that they may have against Equifax.

Rule 23(h) allows for the award of "reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement."  In determining a reasonable fee in a class action, courts generally use two different methods, the "lodestar" method and the "percentage of the fund" method.  *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 786 (E.D. Va. 2001).  Under the lodestar method, the Court determines the number of hours reasonably expended by counsel that created the fund and then multiplies those hours by a reasonable hourly rate to arrive at a lodestar figure.  *Id.*

The lodestar can then be increased or decreased pursuant to various factors as set forth by

the Fourth Circuit.[2]  *Id.* & n.23.  The percentage of the fund method requires the trial court to determine a percentage of the recovery "with the precise percentage selected by the trial court with reference to essentially the same case-specific factors used to adjust, or determine a multiplier, for a lodestar figure."  *Id.*  The Fourth Circuit has not specified a preference for the lodestar method or the percentage of the fund.  *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 463 (S.D.W. Va. 2010).  Ultimately, the determination of a reasonable fee is in the discretion of the district court.  *Id.*  "With either method, the goal is to make sure that counsel is fairly compensated."  *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 575 (E.D. Va. 2016).

Here, Class Counsel requests $9,500,000.  At the outset, it bears mention that the "most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995) (citations and quotations omitted).  Here, Class Counsel have achieved a complete overhaul of how Equifax collects, reports, and discloses Public Records, and has established an ADR process that will allow aggrieved consumers to recover in a streamlined and expeditious fashion.  The injunctive relief in this Settlement will benefit millions of consumers going forward, and could probably only have been achieved in the settlement context as the FCRA is generally thought not to allow private litigants to obtain injunctive relief.  The result is nothing short of extraordinary, and is a testament to Class Counsel's collective expertise, skill, credibility, and hard work.  Given the unique settlement structure, neither the percentage-of-the-fund, nor the lodestar method fit perfectly onto

---

[2]      These factors are: "(1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectations at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; (12) fee awards in similar cases."  *Id.,* citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

this Settlement.

While no cash common fund in the traditional sense has been created, the unquestionable value of the Settlement would exceed the fee Equifax has agreed to pay by many multiples. The credit monitoring and services benefit alone, which has a retail value potentially in the hundreds of millions of dollars if even a small fraction of the Class elects the benefit, would justify Counsel's fee. As with the Trans Union and Experian settlements, the Settlement is superior to a conventional common fund. In a standard common-fund settlement, the defendant agrees to pay out a fund of a certain amount in exchange for a release of the claims asserted (regardless of whether the class members claim into the fund), and fees are awarded out of that fund, with typical amounts ranging from 25%–33% of the fund. *Manuel v. Wells Fargo Bank, N.A.*, 2016 WL 1070819, *5 (E.D. Va. March 15, 2016). But in this case, there is no cap to recovery through the ADR Program.

As discussed above, a nationwide common fund, non-reversionary settlement with a full release of claims was not feasible in this litigation. Instead, through their efforts, Class Counsel have created an uncapped program that provides a straightforward process. At this point, it is difficult to measure how many consumers will eventually participate in the ADR Program, but unlike a more traditional common fund settlement, the establishment of the Program here does not by itself release any individual consumer's claims against Equifax. Thus, while the Settlement here does not create a "common fund" in the traditional sense, it does create a streamlined process and legal assistance incidental to it—which is less onerous on consumers than some claims processes common in common fund settlements—for consumers to achieve meaningful monetary relief.

Likewise, the lodestar method does not adequately capture Class Counsel's efforts here. This Settlement is the culmination of a decade-long effort by Class Counsel to reform the way public records are reported on credit reports by the Big-3 credit bureaus. The lodestar in this

Settlement, while high, does not account for these years spent acquiring the knowledge and earning the credibility necessary to successfully prosecute these claims.  To be blunt, a less sophisticated and less experienced group of lawyers could not have accomplished what Class Counsel did here. Moreover, one persistent criticism of the lodestar method is that it discourages early settlement and encourages lawyers to churn time just to build up lodestar.  *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993) (noting that under lodestar method "there is a strong incentive against early settlement since attorneys will earn more the longer a litigation lasts"). Here, this Settlement resolves not just *Thomas*, but eighteen other cases pending against Equifax in jurisdictions across the country, each one of which would have potentially justified a seven-figure fee award had the case been litigated to judgment.  Class Counsel, which includes the lead attorneys from each of those cases, however, recognized that this Settlement provides the best and most efficient relief to the Class, and opted to focus their efforts of Settlement rather than litigating solely for the sake of billing hours.

Class Counsel have put significant time and resources into litigating the cases that are resolved by this Settlement.  As set forth in the declarations of Class Counsel, counsel's current collective lodestar is estimated in excess of $2,429,128.90 and counsel's out-of-pocket expenses are $117,458.96.  Bennett Decl. at ¶¶ 34-35 (attached as Ex. 1); Adkins Decl. at ¶¶ 12,14 (attached as Ex. 2); Drake Decl. at ¶¶ 14, 16 (attached as Ex. 3); Francis Decl. at ¶ 71 (attached as Ex. 4); Kelly Decl. at ¶¶ 22, 24 (attached as Ex. 5).[3]  The requested attorneys' fees also recognize the substantial post-approval work that Class Counsel will undertake.  This Settlement contemplates at least a 24-month commitment to monitor the Mediation and Binding Arbitration Programs, and

---

[3]     These figures also include time and expenses incurred by David A. Chami, Esq., who is not class counsel but is counsel in two of the Related Actions, *Ledbetter v. Equifax Info. Servs., LLC*, 5:18-cv-5177-PKH (D. Ark.) and *Price v. Equifax Info. Servs., LLC*, 4:18-cv-00236 (S.D. Iowa).  *See* Declaration of David Chami regarding *Ledbetter v. Equifax* at ¶¶ 2, 32 (attached as Ex. 6); Declaration of David Chami regarding *Price v. Equifax* at 2, 31 (attached as Ex. 7).

represent and assist consumers in the process.  The Settlement Class has millions of members and Class Counsel have already spent more than 200 attorney and staff hours responding to class member calls and emails *before* the massive publicity process begins.

In the Trans Union and Experian settlements, for comparison, Class Counsel have already spent literally thousands of hours of paralegal and administrative, and hundreds of hours of attorney time administering, monitoring and assisting consumers in participating in the ADR program.  Bennett Decl. ¶ 3.  Indeed, Class Counsel have hired an additional attorney and multiple administrative employees and licensed a substantial database program in order to deal with the volume of class member inquiries and assistance needed.   Class Counsel fully expect that the amount of time that they will spend on this Settlement and related tasks will be substantial, and that they will incur at least $2,000,000 in additional lodestar between all of the firms in connection with the ADR program.  Adkins Decl. at ¶ 17; Bennett Decl. at ¶¶ 36-40; Drake Decl. at ¶ 17, Francis Decl. at ¶¶ 67-70; Kelly Decl. at ¶¶ 22-23. In short, Class Counsel anticipate spending at least thousands of additional attorney and staff hours assisting class members in taking full advantage of the Settlement.

When calculated based only on lodestar already incurred, the attorneys' fees awarded would constitute a multiplier in the range of **3.73 to 3.91** (the lower end including unreimbursed expenses as part of the fee award).  When anticipated time to be expended in connection with the ADR program is included, as it was in connection with the Experian and Trans Union settlements, the attorneys' fees award would be likely to result in a multiplier in the range of **2.09 to 2.14**. Each of these figures is well in line with multipliers approved in other settlements.   *Clark v. Experian Information Solutions, Inc*., C.A. No. 16-32-MHL, ECF 150 (E.D. Va. Feb. 1, 2019) (approximately 3.7 multiplier when accounting for time for ADR program); *Clark v. Trans Union LLC*, C.A. No. 15-391-MHL, ECF 272 (E.D. Va. Aug. 29, 2018) (approximately 2.7 multiplier

when accounting for time for ADR program); *New Eng. Carpenters Health Benefits Fund v. First Databank*, No. 05-cv-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (8.3 multiplier); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-cv- 04578, 2005 WL 1213926 (E.D. Pa. May 19, 2005) (15.6 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (8.74 multiplier); *In re Merry-Go-Round Enterprise, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (19.6 multiplier); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984) (12 multiplier); *Weiss v. Mercedes-Benz of No. Am., Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (9.3 multiplier); *see also Merkner v. AK Steel Corp.*, 1:09-cv-00423-TSB, ECF No. 79 (S.D. Ohio Jan. 10, 2011) (multiplier of 5.3 in lodestar crosscheck); *In re Cardinal Health*, 528 F. Supp. 2d at 767 (multiplier of 5.9 in lodestar crosscheck); *In re Fernald Litig.*, No. C-1-85- 149, 1989 WL 267038, at *5 (S.D. Ohio Sept. 29, 1989) (multiplier of 5 in lodestar crosscheck).

Further, FCRA cases are risky cases where recovery is far from guaranteed. In these cases, to recover the statutory damages of $100 to $1,000 sought by plaintiffs under 15 U.S.C. § 1681n, plaintiffs would have had to prove that Equifax not only violated the statute, but did so willfully. Equifax was prepared to vigorously challenge this element of plaintiffs' claim, and to prevail, plaintiffs would have had to show not only that their interpretation of the FCRA was correct, but that Defendant's interpretation of the statute was objectively unreasonable. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). This is a high standard, and considering the uncertainty surrounding interpretation of the provision and the difficulties of proving willfulness, there was a substantial risk of nonpayment. *See Domonoske v. Bank of Am.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) ("[G]iven the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment.").

In the face of these risks, Class Counsel were still able to achieve a landmark settlement that benefits millions of consumers, and fundamentally alters the way that Equifax collects and

reports Public Record information.   The Settlement is a testament to Class Counsel's skill, experience, tenacity, and dedication to these matters.   The fee that Equifax has stipulated to pay fairly compensates Class Counsel for their efforts and recognizes that Class Counsel's settlement-related work is far from complete.   Class Counsel's request for the agreed-upon attorneys' fees should be approved.

### IV.      <u>THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS</u>

Courts generally recognize that "[i]ncentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest." *Deem*, 2013 WL 2285972, at *6 (citing *Jones*, 601 F. Supp. 2d at 767).   Plaintiffs request, and Defendant does not oppose, a service award for each Named Plaintiff in the amount of $5,000 each, for their service as Class Representatives, as provided in the Settlement Agreement. Doc. 33.2 at ¶ 5.1. Service awards have been regularly approved by judges in the Eastern District of Virginia in cases such as this one where the class representative took a role in prosecuting the claims on behalf of the class.   *Cappetta v. GC Servs. LP*, No. 3:08cv288-JRS (E.D. Va. April 27, 2011) (Judge Spencer approved a $5,000 service award to each named plaintiff); *Henderson v. Verifications Inc.*, No. 3:11cv514 (E.D. Va. Mar. 13, 2013) (Judge Payne approved a $5,000 service award to named plaintiff); *Pitt v. Kmart Corp.*, No. 3:11cv697 (E.D. Va. May 24, 2013) (Judge Gibney approved a $5,000 service award to the class representative); *Conley v. First Tenn. Bank, N.A.*, No. 1:10cv1247 (E.D. Va. Aug. 18, 2011) (Judge Ellis awarded a $5,000 service award to each named plaintiff); *Ryals v. HireRight Sols., Inc.*, No. 3:09cv625 (E.D. Va. Dec. 22, 2011) (Judge Gibney approved a service award to each class representative in the amount of $10,000).   As described above, the Named Plaintiffs amply fulfilled their duties as Class Representatives, and the requested service awards are appropriate.

## V.   __CONCLUSION__

Plaintiffs Mark William Thomas, Bertamn M. Brown, and C. Ralph Copeland, Jr.
respectfully asks that this Court grant the Plaintiff's Motion for Attorney's Fees, Expenses, and
Class Representative Service Awards.

Respectfully submitted,

MARK WILLIAM THOMAS, BERTAM M.
BROWN, and C. RALPH COPELAND, JR.,
*individually and on behalf of all*
*others similarly situated*

By: ____/s/_____
Leonard A. Bennett, VSB No. 37523
Craig C. Marchiando, VSB No. 89736
Elizabeth W. Hanes, VSB No. 75574
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660Fax: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: Elizabeth@clalegal.com

Matthew J. Erausquin, VSB No. 65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
Email: matt@clalegal.com

James A. Francis, *pro hac vice*
David A. Searles, *pro hac vice*
Francis & Mailman P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Philadelphia, PA 19110
Tel: (215) 735-8600
Fax: (215) 940-8800
Email: jfrancis@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com

Kristi Cahoon Kelly, Esq. VSB # 72791
Andrew J. Guzzo, Esq. VSB # 82170
Casey S. Nash, Esq. VSB#84261
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
E-mail:  kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com

E. Michelle Drake
John G. Albanese
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
T. 612.594.5999
F. 612.584.4470
Email: emdrake@bm.net
jalbanese@bm.net

*Counsel for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

_____/s/_____
Leonard A. Bennett, VSB No. 37523
Craig C. Marchiando, VSB No. 89736
Elizabeth W. Hanes, VSB No. 75574
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601